**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Jeff D. NOEL, Defendant–Appellant.**

No. 90–6053.

United States Court of Appeals,
Sixth Circuit.

Submitted March 21, 1991.

Decided July 19, 1991.

Devon L. Gosnell, Asst. U.S. Atty., W. Hickman Ewing, Jr., U.S. Atty., Frederick

H. Godwin, Tony R. Arvin, and Steve Parker, Asst. U.S. Attys., Office of the U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

Sam Bradley, Memphis, Tenn., for defendant-appellant.

Before KRUPANSKY and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Defendant-appellant, Jeff D. Noel (Noel), appealed from his conviction on one count of possessing with an intent to distribute approximately twelve grams of cocaine. Subsequent to the jury trial, the district court sentenced Noel to serve 23 years in prison. The sentence was enhanced under the sentencing guidelines to reflect Noel's status as a career felony offender.

Noel was indicted along with one Diane Banks (Banks) following his arrest on September 1, 1988. The arrest occurred during execution of a search warrant authorizing officers of the Memphis, Tennessee Police Department to search "a single family dwelling commonly known as 751 Richmond, to include all outhouses and vehicles located on such premises...."

Upon execution of the warrant, the officers discovered that the structure located at 751 Richmond Avenue in Memphis had been subdivided into three residential living units, a circumstance that was not apparent from a visual inspection of the exterior of the buildings. Fronting the street at 751 Richmond Avenue was a dwelling occupied by Noel and his wife. Two additional units to the immediate rear of Noel's quarters were connected to the front building by a catwalk. At the time of Noel's arrest, one of the rear units was occupied by Gerald Jett, and the other by co-indictee Banks. When arrested, Noel was found in Banks's apartment clad only in his underwear, carrying a plate of cocaine.

Testifying at Noel's suppression hearing, Officer E.E. Cash (Cash) of the Memphis Police, who applied for the search warrant, explained the circumstances that preceded his application to the magistrate. The district court summarized Cash's testimony as follows:

Officer Cash testified that he surveilled the premises on and off for two days prior to the search. A confidential informant had told him that Noel was known to carry drugs on his person and would go back and forth between the front and rear structures. Most noteworthy is Officer Cash's admission that he was concerned that there might be more than two residences on the premises. He spoke with other officers who had previously executed warrants at 751 Richmond, the most recent being twelve years previous, who stated that the complex was one single family dwelling. Officer Cash consulted with the Memphis City Directory, which only revealed one residence at the site known as 751 Richmond. An inquiry to Memphis Light, Gas & Water Division revealed only one address, 751, on the premises.

At the time Cash and his fellow officers executed the warrant, the rear units had no exterior designations or identifying addresses, nor were they equipped with separate mailboxes. Hence, there existed no outward indication that the facility located at 751 Richmond Avenue was other than a single-family dwelling. It was not until after the search warrant was executed that the police were apprised of Jett's and Banks's separate occupancy of the rear units.

As previously mentioned, when Officer Cash et al. entered the part of the building that was occupied by Banks, they discovered Noel in his underwear, carrying a container of cocaine. When Noel observed the officers, he fled to another room and emptied the contents of the plate onto the carpeted floor. An officer removed a section of carpet and retrieved about 12 grams of a white powdery substance that later was identified as cocaine.

Noel and Banks were taken into custody. While at the police station, Banks stated to a police officer: "The dope is mine." Several days prior to the commencement of the scheduled joint trial, Banks entered a plea of guilty. During her plea colloquy, Banks

acknowledged that Noel had purchased the cocaine. Banks explained that she had planned to assist Noel in distributing some of the cocaine and in consuming the rest. This, of course, was in conflict with the post-arrest statement in which she had professed ownership of the cocaine.

Two days into Noel's trial, the defense unsuccessfully attempted to serve Banks with a subpoena *ad testificandum*. In lieu of her live testimony, defense counsel moved to introduce Banks's inculpatory statement through the police officer to whom she had confided. The district court disallowed the statement under Fed.R.Evid. 804(b)(3), finding both that Banks was not "unavailable" to testify, and that, in any event, her initial statement concerning ownership of the cocaine was not sufficiently trustworthy.

■ Noel's first assignment of error relates to the district court's denial of his motion to suppress evidence confiscated during the September 1, 1988 search of the dwelling located at 751 Richmond Avenue. Noel premised his suppression argument on the "particularity" requirement of the fourth amendment. "[N]o warrants shall issue, but upon probable cause ... and *particularly describing the place to be searched.*" U.S. Const. amend. IV (emphasis added). Noel argued that the warrant was invalid because it failed to distinguish between the three units located at the 751 Richmond Avenue address.

In *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), law enforcement officers suspected one Webb of criminal conduct and obtained a warrant authorizing the search of "premises known as 2036 Park Avenue third floor apartment." *Id.*, at 80, 107 S.Ct. at 1014. At the time they applied for the warrant, the officers believed that only one apartment unit existed on the third floor of the building located at the specified address. Upon executing the warrant, however, they discovered that the third floor had been subdivided into two separate units. They first searched *Garrison's* apartment—not Webb's—and discovered contraband therein. Garrison, who was not the target of

the issued warrant, was subsequently indicted. Prior to his trial, he invoked the particularity clause in support of his suppression motion.

The Supreme Court concluded that the validity of the warrant should have been judged not in light of facts discovered upon execution of the search warrant, but rather "in light of the information available to [the officers] at the time they acted." *Id.*, at 85, 107 S.Ct. at 1017. "The validity of the warrant must be assessed on the basis of the information the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate." *Id.* The Court in *Garrison* concluded that a search warrant inaccurately identifying the situs of the search will, nevertheless, be upheld against a particularity challenge if the warrant faithfully described the structure as it was known or should have been known to the officers after reasonable inquiry.

The facts in the case at bar clearly illustrate the reasonableness of Cash's inquiry into the configuration of the structure located at 751 Richmond. Cash consulted with other officers who had previously executed warrants at that address. He checked the Memphis, Tennessee phone directory, which disclosed the presence of only one residence at the address. Further, he inquired of the local utility company, which corroborated his findings and confirmed that the structure consisted of only one unit. Finally, the evidence demonstrated that there existed no outward indications that the buildings on the parcel had been divided into three units. Cash's inquiry into the functional arrangement of the premises was more thoroughgoing than that approved by the Supreme Court in *Garrison*. *See* 480 U.S. at 85 n. 10, 107 S.Ct. at 1017 n. 10 (officer's inquiry to utility company and check of police records sufficiently corroborated his belief that the third floor consisted of only one unit, and absolved him of constructive knowledge that the third floor had been divided into two units). In the instant case, it was not until he executed the warrant that Cash determined that 751 Richmond had been subdivided into three units. As in *Garri-*

*son,* however, "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." *Id.,* at 85, 107 S.Ct. at 1017.

■ In his second assignment of error, Noel challenged the district court's decision, pursuant to Fed.R.Evid. 804(b)(3), to not admit evidence of Banks's post-arrest statement in which she claimed ownership of the cocaine. Rule 804(b)(3) provides for the admission of "statements against interest" made by witnesses "unavailable" to testify at trial. The Rule defines a "statement against interest" as

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, *or so far tended to subject the declarant to civil or criminal liability,* or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed.R.Evid. 804(b)(3).

■ The district court's evidentiary ruling under Rule 804(b)(3) is reviewed for abuse of discretion. *United States v. MacDonald,* 688 F.2d 224, 233 (4th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983); *United States v. Gabay,* 923 F.2d 1536, 1540 (11th Cir.1991). *See Murphy v. Owens–Illinois, Inc,* 779 F.2d 340, 343 (6th Cir.1985) (discussing Rule 804(b)(3) in the context of civil litigation).

In *United States v. MacDonald,* the Fourth Circuit outlined the factors to be considered in determining whether a hearsay statement should be admitted under Rule 804(b)(3) in a criminal case.

> [A]s applied to criminal matters, three requisites must be met prior to reception of the hearsay testimony. First, the declarant must be unavailable. Second, from the perspective of the average, reasonable person, the statement must have been truly averse to the declarant's penal interest, considering when it was made. Finally, corroborating circumstances must clearly establish the trustworthiness of the statement.

*MacDonald,* 688 F.2d at 232–33 (internal citations omitted).

The first element was not clearly established in the case at bar. The district court ruled that Banks was not "unavailable" to testify at Noel's trial because Noel had made only a cursory and belated effort to obtain Banks's live testimony. The government, however, elected in its responsive argument on appeal not to rely on the district court's favorable ruling on availability, and the issue therefore may be deemed waived.

The second element to be considered in the application of Rule 804(b)(3) was satisfied in the case at bar. It is evident that Banks's statement in the police station immediately after her arrest concerning ownership of the cocaine was contrary to her penal interests because, among other things, it tended to portray her as having played a major role in the offense, and thus may have enhanced her offense level under the sentencing guidelines. *See* U.S.S.G. § 3B1.1 (offense level enhanced for aggravating role in criminal conduct).

The district court properly excluded Banks's statement against interest because it was not corroborated to a degree sufficient to render it clearly trustworthy, because it was not repeated subsequent to her arrest,[1] and because she disclaimed ownership of the cocaine when she entered her guilty plea. Also, the court noted the existence of a "relationship" between Banks and Noel, as evidenced by the informality of his appearance when arrested in Banks's apartment. In a conclusion that was not clearly erroneous, the court noted that Banks had reason to lie in an effort to exculpate Noel, whom she may have had

---

**1.** *Compare United States v. Slaughter,* 891 F.2d 691, 698 (9th Cir.1989) (declarant's inculpating statement made on two occasions separated by nearly three months).

reason to fear. "Persons will lie despite the consequences to themselves to exculpate those they love or fear, to inculpate those they love or fear, or because they are congenital liars." *Weinstein's Evidence,* vol. 4 at § 804(b)(3)[01] (1990). *See United States v. Silverstein,* 732 F.2d 1338, 1346 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985) (statements inculpating the declarant and exculpating the defendant are inherently suspect). The district court did not abuse its discretion in refusing to admit the statement.

Noel's remaining assignment of error, which relates to his sentencing as a career offender, is without merit. Accordingly, for the reasons expressed herein, the judgment of the district court is hereby AFFIRMED.