**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny Wade ARTHUR (90–6080), and**
**Terry Keith Arthur (90–6079),**
**Defendants–Appellants.**

**Nos. 90–6079, 90–6080.**

United States Court of Appeals,
Sixth Circuit.

Argued July 15, 1991.

Decided Nov. 14, 1991.

Guy W. Blackwell, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Greeneville, Tenn. and John W. Gill, Jr., U.S. Atty., Office of the U.S. Atty., Chattanooga, Tenn., for the U.S., plaintiff-appellee.

James A.H. Bell (argued and briefed), Law Offices of James A.H. Bell, Knoxville, for Terry Keith Arthur, defendant-appellant.

Anthony Philip Lomonaco (argued and briefed), Vaughan & Zuker, Knoxville, Tenn., for Danny Wade Arthur, defendant-appellant.

Before BOGGS, Circuit Judge, and BROWN, Senior Circuit Judge, and GIBBONS, District Judge.*

BAILEY BROWN, Senior Circuit Judge.

Defendants Danny Wade Arthur (Danny) and Terry Keith Arthur (Terry), two broth-

* The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

ers, appeal from their convictions for the armed robbery of the Bank of East Tennessee in Knoxville, Tennessee (bank). Both defendants allege that numerous trial errors occurred that mandate reversal. Because Terry confessed to the crime from the witness stand, any error is harmless as to him. Danny's conviction, however, is reversed because the district court induced a material witness to exercise his fifth amendment right to remain silent, and also because the district court erroneously excluded material, exculpatory evidence.

I.

On October 3, 1988, at approximately 2:00 p.m., a lone, white male wearing a baseball cap entered the bank and approached a teller. This man opened a bag he was carrying, showed the teller a gun and demanded money. After receiving the money, the robber exited through the front door. A witness saw the robber get into the passenger side of a black Chevrolet driven by another white male, which then moved away. The robbery was immediately reported to the local police and the FBI.

When FBI Agent Dixon and Agent Kazakewich learned of the robbery, they reported an incident that had occurred earlier that day. The agents had seen a black Chevrolet cruising slowly in the neighborhood of the bank about three hours before the robbery occurred. The agents took down the Florida license plate number and followed the car until they lost it in traffic. There were two white males in the car, with the driver wearing a baseball cap.

A black Chevrolet with the license plate number recorded by the agents was owned by Ginger Stivers of Jacksonville, Florida. When approached by the FBI, Ms. Stivers reported that she had allowed her brother Danny to borrow the car. The FBI acquired, based on the suspicions raised by Ms. Stivers' statement, a picture of Danny. Agent Dixon positively identified Danny from this photograph as the individual driving the black Chevrolet the day of the robbery, and two witnesses at the bank robbery identified Danny from a photo-graph array as the robber. Danny was arrested based on these identifications.

After Danny's arrest, Ms. Stivers, the sister, changed her statement concerning who had borrowed her car. According to her new statement, Terry, her other brother who is the co-defendant, borrowed her car. She had, she said, initially rejected Terry's request to use the car because of her husband's anticipated disapproval. Her husband disliked Terry and did not trust him with the car. Terry suggested that she lie to her husband by telling him that Danny had borrowed the car because her husband would not object to Danny's borrowing the car. She told the same lie, she said, to the FBI out of fear that her husband would discover the deceit.

On November 4, 1988, Terry was arrested in Michigan after a traffic stop on charges unrelated to this bank robbery. Larry Fields, a passenger in the car, was also arrested. In a search of the car incident to the arrest, a .32 caliber revolver, cash of $1,235, and several baseball caps and wigs were discovered. Both Terry and Larry Fields were held in custody.

In two separate FBI interviews of Terry and Larry Fields conducted two weeks after their arrest, both men confessed to committing a series of robberies in Tennessee and North Carolina, including the robbery in Knoxville. Both maintained that Danny was not involved in any of the robberies.

Both Terry's and Larry Fields' confessions give the same basic account of the Knoxville robbery. Terry drove to Florida to get Ms. Stivers' car for use in the robbery. The morning of the robbery they "cased" the bank. As stated in Terry's confession, "[Terry] stated he observed a white male and a white female in a gray Dodge Diplomat ... and recalled telling FIELDS that the two were detectives." These individuals presumably were the FBI Agents Dixon and Kazakewich. Terry drove away from the bank and lost the agents' car in traffic. Terry and Larry Fields then decided to return to the bank and commit the robbery. With Larry Fields driving the car, Terry entered the

bank with a bag and a gun. As asserted in the confession, "[Terry] stated ... he was wearing a blue denim baseball-type cap with a wig ..." to disguise his appearance when he robbed the bank. After receiving the money from the teller, he exited the bank and got into the black Chevrolet driven by Larry Fields. As written up by the FBI, Larry Fields' confession states, "no other individuals participated in the bank robberies and [Fields] specifically cited that DANNY ARTHUR was not present in Knoxville, Tennessee ... [and] stated that in addition, he has never met DANNY ARTHUR." Terry's in-court confession also maintains that Danny was not involved.

Two exhibits introduced at trial corroborate these confessions. First, a photograph of Larry Fields taken by a surveillance camera at the bank several hours before the robbery was introduced at trial. Second, several baseball caps and wigs were discovered in the car when Terry and Larry Fields were arrested in Michigan. Moreover, no witness could place more than two individuals in the black Chevrolet at any time.

The prosecution maintains that the course of events occurred as follows: Larry Fields "cased" the bank several hours before the robbery and the surveillance camera took his picture. Danny was driving the black Chevrolet with Terry as a passenger when the two FBI agents became suspicious and took down their license plate number. After Danny lost the agents in traffic, they returned to the bank. Danny entered the bank wearing a baseball cap and committed the robbery and Terry drove the "get away" car. Terry and Larry Fields then confessed to the crime in order to exculpate Danny. Both Terry and Larry Fields faced so much time in prison anyway, according to the government, the effect of an additional conviction for this bank robbery would be minimal.

Both Terry and Danny were charged with the bank robbery. Larry Fields was not indicted despite the fact that he confessed to the crime and a bank surveillance camera had taken his picture several hours before the robbery. The primary evidence that the government had connecting Danny to the robbery was the positive identification by several of the witnesses in the bank and the FBI agents. Danny maintained that this was a case of mistaken identification and that the witnesses were mistaking him for his brother Terry. Although Terry was balding and Danny had a full head of hair, Danny maintained that the two brothers looked very similar when Terry wore a baseball cap and wig. Danny made a motion before trial that his co-defendant Terry be required at the trial to put on the wig and baseball cap in front of the bank robbery witnesses. The government maintained that there was no foundation for this demonstration because all of the witnesses to the robbery stated that the robber did not wear a wig. The district court denied the pre-trial motion.

At the trial, against the advice of his court-appointed counsel, Larry Fields took the stand as a witness for Danny. He testified that he had arranged to and did meet Terry Arthur in Lexington, Kentucky, looked for a bank to rob in that area and ultimately they went on to Knoxville and looked there for a bank to rob. At the moment when Larry Fields was about to get into the details of the bank robbery itself, the government counsel asked the district court to inform the witness of his fifth amendment right to remain silent. The district court entered into a long colloquy with Larry Fields outside the presence of the jury. The district court strongly encouraged Larry Fields to assert the fifth amendment. Larry Fields stated that he wanted to testify in order to clear Danny. Finally the district court stated, "I think it's not to your best interest to testify because anything you say may be held against you in another prosecution against you for bank robbery, could and would be used against you. Knowing that, do you still want to testify or do you want not to testify." Larry Fields then stated, "I want to plead the fifth." Counsel for Danny then requested to be allowed to ask specific questions of Larry Fields in front of the jury, and to allow Larry Fields to then assert the fifth amendment. The district court refused. Moreover, the district court

refused to allow Terry or the government to cross-examine Larry Fields before the jury on those matters about which Larry Fields had already testified. Danny then sought to introduce Larry Fields' confession to the FBI as a statement against penal interest, but the district court denied the request.

After Larry Fields decided to exercise his fifth amendment privilege, Terry, outside the presence of his own counsel, told counsel for Danny that he would like to testify on Danny's behalf. Over the objection of Terry's counsel, Terry testified that he was the person who robbed the bank and that Larry Fields drove the "get-away" car. Terry maintained that he wore a wig and a baseball cap to disguise his appearance, and that Danny was not involved in the crime in any way. Terry requested that he be allowed to put on the wig and cap to demonstrate to the jury that with the wig and cap he greatly resembled his brother. The district court refused to allow the demonstration.

## II.

Danny maintains that the district court committed reversible error by inducing Larry Fields to exercise his fifth amendment right, by refusing to allow into evidence Larry Fields' confession to the FBI, and by refusing to allow Terry to put on the wig and cap before the jury. Each of these claims must be examined separately.

## A.

As stated, Danny maintains that the district court erred in inducing Larry Fields to assert the fifth amendment. The government claims the district court had the discretion to inform Larry Fields of his right to remain silent and the possible consequences of his testimony.

Larry Fields testified that, with Terry Arthur, after looking for a bank to rob around Lexington, Kentucky, they went on to Knoxville and looked for such a bank

there. He admitted that he "cased" the bank on the day of the robbery as shown by the photograph taken by the surveillance camera. At the stage in Larry Fields' testimony when he was about to testify concerning the actual robbery, the prosecution asked the district court to inform the witness of his rights.[1] The following exchange then occurred between the district court and the witness Larry Fields outside the presence of the jury:

[The Court] Q. Mr. Fields, do you have a lawyer?

A. Yes, your Honor, but I'm not going to confess to actually robbing any, anything.

. . . .

Q. Well, here's the thing about it. You, You've got a right to remain silent here, and anything you say here would be, could be used against you, whether you say you confess or not.

. . . .

A. But I—I understand what's going on, it's—I'm being put in a position I don't like. I mean, I know there's an innocent person trying to get convicted of a bank robbery he didn't do.

Larry Fields stated to the court that he wanted to testify. The district court continued to warn Fields of the consequences of testifying. Finally, the district court stated, "I think it's not in your best interest to testify because anything you say may be held against you in another prosecution against you for bank robbery, could and would be used against you. Knowing that, do you still want to testify or do you want not to testify?" Larry Fields then refused to testify further.

The district court has the discretion to warn a witness about the possibility of incriminating himself. *United States v. Silverstein*, 732 F.2d 1338 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). An abuse of that discretion can occur, however, when the

---

**1.** It should be noted that the prosecution did not ask the district court to inform the witness of his right to remain silent until after the witness had effectively incriminated himself and Terry but before Larry Fields' testimony began to severely damage the government's case against Danny.

district court actively encourages a witness not to testify or badgers a witness into remaining silent. Indeed, *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), holds that such is a violation of due process. Larry Fields was represented by counsel and stated to the district court that he wanted to testify after he had been informed by the court of his right to remain silent. The district court repeatedly informed Fields of his right to remain silent and stated to him that to testify was against his interest. Under these circumstances, we think it was an abuse of the district court's discretion to so induce Larry Fields to exercise his fifth amendment rights. *Id.* at 97, 93 S.Ct. at 353.[2]

█ Moreover, under the circumstances of this case, the district court's actions cannot be characterized as harmless error. Fields' testimony was essential to Danny's defense of mistaken identification. As stated, Danny maintained that the eyewitnesses were mistaking him for his brother because his brother wore a wig and cap during the robbery. Fields was prepared to corroborate this account.

### B.

█ After Larry Fields refused to testify further, counsel for Danny requested that he be allowed to introduce the statement made by Fields to the FBI, confessing to this and other bank robberies, under the Federal Rule of Evidence 804(b)(3) exception to the hearsay rule. Rule 804(b)(3) states:

> Statement against interest. A statement which was at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable man in the declarant's position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless cor-

roborating circumstances clearly indicate the trustworthiness of the statement.

There are three requirements before this statement could be admissible under Rule 804(b)(3). *United States v. Noel*, 938 F.2d 685 (6th Cir.1991). First, Fields must be unavailable to testify. Second, the statement must subject Fields to criminal liability in a real and tangible way. The third requirement is that the "corroborating circumstances clearly indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3); *see United States v. Noel*, 938 F.2d 685 (6th Cir.1991).

All parties agree that Fields was unavailable to testify because, as we have determined, he ultimately was induced to exercise his fifth amendment privilege. With respect to the question whether Fields' statement to the FBI shortly after he was arrested in Michigan subjected him to criminal liability in a real and tangible way, the government appears to argue that the statement does not do this with respect to *this* robbery because in it Fields confesses to *other* bank robberies. In other words, the government argues that, given Fields' confession to the *other* robberies, this confession to *this* robbery does not subject Fields to significant criminal liability. We disagree. We believe that a reasonable person in Fields' position would not have confessed to any of the robberies unless he believed his confession to be true. Accordingly, we conclude that the confession was against Fields' penal interest.

█ The third requirement, under *Noel*, for introducing Larry Fields' confession is that the statements be clearly corroborated. The sufficiency of the corroborating circumstances is within the discretion of the district court. The district court can abuse its discretion, however, when it refuses to allow into evidence statements that are corroborated by other substantial evidence. There was considerable corroboration of Fields' confession, including the

---

**2.** In *Webb*, the state trial judge told a defense witness before he began to testify that he was not required to testify, and that if he lied under oath, the court would personally see that his case went to the grand jury. The witness then asserted his fifth amendment privilege. The Supreme Court held that the record established that the trial judge drove the defense witness from the stand in violation of the due process clause. *Id.* at 97–98, 93 S.Ct. at 353.

picture of Fields in the bank several hours before the robbery, Fields' own testimony as a witness before he exercised his fifth amendment rights, Terry's confession to the FBI in which he stated that Fields, not Danny, assisted in the robbery, and it was the government's very theory and contention that only two men, Danny who went in the bank and Terry who drove the get away car, actually carried out the robbery. Fields was not charged as an aider and abettor or accessory in the indictment. No reasonable explanation is offered as to why Fields, even though he had confessed to the robbery of other banks, would falsely confess, in his statement to the FBI in Michigan, to having been a principal in the robbery of this bank just to aid Danny. Accordingly, we believe that it was an abuse of discretion not to admit Fields' statement.

### C.

Danny also maintains that the district court erred by refusing to allow Terry to put on a wig and cap before the jury at some point during the trial. As stated, this question was raised several times during this case. A motion was made before trial by Danny asking the court to require Terry to put on a wig and cap in front of the government's eyewitnesses. This would have allowed the witnesses to see the similarities between the two brothers. Both the government and Terry opposed this motion, and the district court denied the motion.

During the trial, Larry Fields testified that Terry wore a wig "sometimes." Terry then took the stand and confessed to committing the crime while wearing a wig and cap. He asked to be allowed to put on the disguise to show the jury that, despite his baldness, with a wig and cap on he resembles his brother. The government maintains that the evidence was simply not relevant because all the government eyewitnesses testified that the robber was not wearing a wig.

Evidence concerning the wig and the cap, however, was highly relevant to Danny's mistaken identification defense. Considering the fact that Terry was bald, a wig and baseball cap might well have caused him to look more like his brother Danny, who had a full head of hair. Moreover, Terry possessed wigs and baseball caps when he was arrested in Michigan (with Fields) after this robbery. The district court erred in refusing to allow this evidence to be introduced.

### III.

Terry asserts that the district court committed reversible error by restricting his cross-examination of Larry Fields and by denying defense motions for a severance. Further, counsel for Terry maintains that Terry was denied a fair trial by the misconduct of Danny's attorney in convincing Terry to testify for his brother.

### A.

■ As stated, Larry Fields took the stand and implicated Terry in the robbery. After being informed of his rights by the district court, Larry exercised his fifth amendment right to remain silent. Terry maintains that the district court committed reversible error when it refused to allow cross-examination of Larry Fields in areas voluntarily testified to on direct.

Larry Fields' testimony was directly relevant to the guilt of Terry. However, Terry took the stand and confessed to committing the crime. Terry's testimony went into much greater detail concerning the crime than Larry Fields' testimony did. Any error committed by the trial court in refusing to allow Terry's cross-examination of Larry Fields was therefore harmless.

### B.

■ Terry maintains that Danny's defense of mistaken identification was so antagonistic to his own defense that severance was required. Federal Rule of Criminal Procedure 14 allows a district court to order separate trials for defendants indicted together. The denial of a motion to sever is reviewed under an abuse of discretion standard. *United States v. Sutton*, 642 F.2d 1001 (6th Cir.1980). Even if defendants attempt to cast blame on each

other, severance is not necessarily required. *United States v. Kendricks*, 623 F.2d 1165 (6th Cir.1980). To prevail, a defendant must show that the antagonism between the co-defendants will mislead or confuse the jury. *Id.*

 The factual issues presented in this case were clear. Under the circumstances of this case, it was not an abuse of discretion to deny a severance.

## C.

 Counsel for Terry maintains that Terry was denied a fair trial by the conduct of Danny's counsel. A discussion occurred outside the presence of Terry's counsel between Terry and Danny's counsel in which Terry stated that he wanted to take the stand in defense of his brother. This discussion was initiated by Terry when Danny's counsel came to converse with Danny while both defendants were in a holding cell. Counsel for Terry maintains that this conversation constituted unethical behavior by Danny's counsel. There was no unethical behavior because the contact was initiated by Terry, and Danny's attorney immediately told Terry to speak to his own attorney.

## IV.

The judgment of conviction of Terry Arthur is AFFIRMED. The judgment of conviction of Danny Arthur is REVERSED and the case is REMANDED to the district court.

BOGGS, Circuit Judge, concurring.

I agree with the judgment of the court that the conviction of Danny Wade Arthur must be reversed, and with all parts of the opinion except II. B. and II. C.

I do not agree that exclusion of the 302 statements was error. As *Noel* establishes an abuse of discretion standard for Rule 804(b)(3) decisions, Arthur must show that Judge Hull abused his discretion in excluding Fields's 302 statements. In light of the paucity of corroborating evidence referred to at page 10, I cannot find that he abused that discretion.

The Advisory Committee Notes to Rule 804(b)(3) state that "the requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication." This distrust of confessions offered to exculpate the accused was even more keenly felt by the House, which added the requirement that the corroborating circumstances *clearly* indicate the trustworthiness of the statement. The drafters of the Rule cited *Donnelly v. United States*, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1912), as the case they were seeking to overturn by adopting the rule. *Donnelly* involved a murder, and the evidence showed that only one person could have committed the murder. This made the third person's confession key to the case, as it automatically exonerated the accused. Thus, corroborating circumstances, like those in *Donnelly*, that proved the third person was likelier to be the murderer, even though they did not corroborate any statement that the defendant did *not* commit the murder, were dispositive.

Here, many persons could have assisted and planned the robbery, and circumstances showing that Fields was one of those persons does not automatically exonerate Danny. I think that in these multiple defendant cases, the statement that must be clearly corroborated is the one exculpating the accused, not the confession of the witness. Here, we have almost no corroboration of Fields's statement *that Danny was not involved.*

Let me consider each corroborating circumstance in order. Fields's testimony as a witness cannot corroborate his own 302s: if his 302s are lies, then so was his testimony. The House Committee notes to Rule 804(b)(3) (H.Rep. 93–650, 93d Cong., 2d Sess., *reprinted in* West's Federal Civil Procedure and Judicial Rules 375) clearly indicate that the witness's own testimony cannot corroborate the exculpating statements. This leaves Terry's testimony and the photograph. The photograph merely shows Fields's involvement in the robbery. As I mention above, I don't think Congress had this sort of corroboration in mind in multiple defendant cases, as the circum-

stance of one person's involvement does not exclude the involvement of others. That leaves Terry's in-court confession. Here, I think that the heavy burden of proving an abuse of discretion precludes us from overruling Judge Hull when only one piece of evidence supports Fields's statement that Danny wasn't involved.

██ I also do not agree with section II. C., which holds that "the district court erred by refusing to allow Terry to put on a wig and cap before the jury." Normally, such a decision is reviewed for abuse of discretion. *United States v. Brady*, 595 F.2d 359 (6th Cir.1979). In every case in which a court has ordered a defendant to wear a wig for identification purposes, there has been some significant indication that the perpetrator of the crime was wearing a wig. In fact, the Fourth Circuit in *United States v. Turner*, 472 F.2d 958 (4th Cir.1973), referred to the government's having established a foundation for its request that defendant wear a wig. In this case, there is no such evidence apart from Terry's own testimony. All of the eye witnesses testified that whoever robbed the bank was not wearing a wig. In light of this, I cannot find that Judge Hull abused his discretion.

Therefore, while I concur in the judgment of the court, I cannot agree with parts II. B. and II. C. of the opinion.

GIBBONS, District Judge, concurring.

I agree with the judgment of the court reversing the conviction of Danny Wade Arthur and with all parts of the opinion except II.C. I also offer some additional thoughts concerning the issue discussed in part II.B of the opinion.

I agree with the court's conclusion that the trial court erred in excluding from evidence the confession made by Larry Fields to the FBI under Federal Rule of Evidence 804(b)(3) and its analysis of this issue, as set out in part II.B of the opinion. I also have a view not addressed by the court concerning the proper interpretation of Rule 804(b)(3)'s requirement of "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement," when the statement tends to expose the declarant to criminal liability and is offered to exculpate the accused.

The court recites the ample corroboration for Fields' confession. Requiring any more corroboration than was present in this case would contravene the judge's proper role as determiner of the legal issue of admissibility of the evidence and make the judge, rather than the jury, the ultimate decision-maker with respect to the truth of the statement. Rule 804(b)(3)'s requirement that corroborating circumstances clearly indicate the trustworthiness of the statement does not mean that the judge must decide whether he personally believes the statement and use that personal belief as a basis for the evidentiary ruling. Given the degree of corroboration here, the failure to admit the statement was an abuse of discretion.

A trial court is not required to consider the trustworthiness or reliability of most categories of statements admissible under Federal Rules of Evidence 803 and 804. Exceptions to this general approach are the catch-all provisions of Rules 803(24) and 804(b)(5), the business and public records provisions of Rule 803(6), (7) and (8), and the portion of Rule 804(b)(3) which is at issue in this case. The only one of these provisions which requires corroboration in deciding the issue of trustworthiness is Rule 804(b)(3). This requirement certainly involves the trial court in weighing evidence to a greater extent than is contemplated by other evidentiary rules under which trustworthiness is evaluated, particularly in view of the additional requirement that clear indications of trustworthiness exist. Yet nothing suggests that the drafters of the rule intended that trial judges should do anything other than determine the reliability of the statement for purposes of admissibility.

In discussing the appropriate approach to trustworthiness determinations under the Federal Rules of Evidence, several courts have distinguished between the court's proper role in determining the reliability of a statement and the jury's proper role in determining its credibility. *See Moss v. Ole*

**220**

*South Real Estate,* 933 F.2d 1300, 1306–07 (5th Cir.1991) ("credibility is not the focus of the trustworthiness inquiry" under Rule 803(8)(C); "the focus is the report's reliability"); *United States v. Peak,* 856 F.2d 825, 834 (7th Cir.), *cert. denied,* 488 U.S. 969, 109 S.Ct. 499, 102 L.Ed.2d 535 (1988) (argument that trial court properly excluded Rule 803(3) state of mind statement for lack of trustworthiness is without merit because it focuses on credibility of declarant rather than degree of reliability inherent in the statement; district judge does not have discretion to exclude evidence because he does not believe the witness). *Cf. United States v. DiMaria,* 727 F.2d 265 (2d Cir.1984).

This approach is in no way inconsistent with the Advisory Committee Notes to Rule 804(b)(3), which say that "the requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication." The reliability determination, properly made, certainly drastically reduces the possibility that an untrue statement will be admitted. In order to find a statement trustworthy under the rule, the corroboration must be sufficient to *clearly* indicate the statement's reliability. More than an ordinary assessment of reliability is required, but the rule does not contemplate that an assessment of trustworthiness is the same exercise as a determination of credibility.

I also disagree with the view articulated in Judge Boggs' concurring opinion that the statement that must be corroborated is the one exculpating the accused, not the confession of the witness. The rule does not draw such a distinction. The fact that parts of a statement are corroborated may make it likely that all parts of a statement are trustworthy. In any event, here there was some corroboration of the portion of Fields' statement exculpating Danny—Terry's statement and the government's own proof showing that only two men actually carried out the robbery.

With respect to the trial court's refusal to allow Terry Keith Arthur to put on a wig and cap before the jury, discussed in section II.C. of the court's opinion, I do not agree that this refusal was reversible error. While, under the circumstances of this case, seeing Terry in a wig and cap might have been helpful to the jury, the decision not to permit that demonstration does not rise to an abuse of discretion. *See United States v. Brady,* 595 F.2d 359, 361 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979).

For these reasons, I concur in all of the court's opinion except section II.C.