# COURT OF APPEALS
## DECISION
## DATED AND FILED

## December 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP191-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF5760

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

　　PLAINTIFF-RESPONDENT,

　V.

JESSE N. MCCAULEY,

　　DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Jesse N. McCauley appeals a judgment of conviction for felony murder and possession of a firearm by a felon. He also appeals an order of the trial court denying his postconviction motion. On appeal, he argues that he is entitled to a new trial because the judge was biased in favor of the State in violation of his right to due process, and that the State presented insufficient evidence to support his intent to rob the victim in this case. We disagree, and for the reasons set forth below, we affirm.

## BACKGROUND

¶2     McCauley was charged with felony murder, with the underlying offense of attempted armed robbery, and possession of a firearm by a felon as a result of his role in the shooting of Scott Ross on the night of December 7, 2016. As described in the criminal complaint, McCauley's girlfriend, Lyneesha Battle, arranged to meet Ross for a date.[1] When Ross arrived at Battle's house, Battle and McCauley approached Ross in his car. Battle went to the passenger side door, and McCauley approached Ross at the driver's side door. McCauley was holding a gun and told Ross to get out of the car. Ross drove away, and McCauley fired shots at Ross. Ross suffered a gunshot wound to his back and was pronounced dead at the scene.[2]

---

[1] At trial, when asked if "a date means that probably is going to end up in prostitution," Battle responded, "Maybe."

[2] Battle was also charged with felony murder for her role in Ross's death; however, she entered into a plea agreement with the State that resulted in her pleading guilty to attempted armed robbery as a party to a crime in exchange for her testimony at McCauley's trial. Battle had been sentenced by the time of McCauley's trial and was serving her sentence. By the time of the trial, she was nearing the end of her term of initial confinement.

¶3 The case proceeded to a jury trial. The State called Battle as a witness at the trial, but during questioning regarding details of that night, Battle's testimony consisted largely of responses to the effect that she did not remember. At one point, the trial court proceeded to call the attorneys to the bench and held a sidebar conference. At the conclusion of the sidebar conference, the trial court excused the jury. Once the jury was out of the room, the trial court said:

> All right. So Ms. Battle, I want to give you the opportunity to talk to your attorney. And this is my concern, all brought up by me:
>
> Your negotiation—what I heard in court today was that your negotiation for having your murder charge amended was partially due to the fact that you were going to provide truthful testimony here. I don't know if you can't remember anything, but it certainly seems a little strange to me that you could remember what you talked to Detective Jacks about a couple hours ago, and what you talked to the police about a couple years ago.
>
> So if you don't remember, go ahead and persist in the kind of answers that you're giving. I don't know if the State is going to reevaluate your case; all I know is—what I heard is that part of your deal was premised on truthful testimony. And I am concerned for you that the testimony, as it's coming in right now, may present a situation that the State moves to withdraw your plea and resentence you, and charge you with something completely different, like that murder charge.
>
> You know, if you don't remember, you don't remember. But I think Attorney Voss indicated to me he certainly wants the opportunity to talk to you about this.
>
> ….
>
> All right. Attorney Lonski doesn't know— indicated that, at this point, he hasn't done any research on which way he's leaning; it's something he's going to think about. And of course, Attorney Flanagan doesn't think I should be interposing myself. But Ms. Battle, this is nothing other than to protect you with the kind of testimony you're giving.

¶4       The trial resumed after Battle spoke with her attorney.  At that point, Battle testified that she was afraid of someone named "Charlie" and that Charlie had picked her and McCauley up after the shooting.  She also identified McCauley as the person who shot Ross, and she further testified that she saw McCauley standing there holding a gun after the shots were fired and Ross's car had driven off.  However, Battle also testified that "the plan" was not to shoot Ross.  Instead, the plan was for McCauley to "take" Ross's money.  In fact, Battle indicated "that [McCauley] was going to demand Mr. Ross's money, and Mr. Ross was going to give it up[.]"  On cross-examination, Battle further testified that she "knew about the robbery."

¶5       Ultimately, the jury found McCauley guilty of felony murder and possession of a firearm by a felon.  He was subsequently sentenced to a total of fifty years of imprisonment, composed of thirty-five years of initial confinement and fifteen years of extended supervision.[3]

¶6       McCauley filed a motion for postconviction relief in which he argued that he was entitled to a new trial because the trial court "abandoned [its] neutrality and became an advocate for the [S]tate" when it admonished Battle.  In the alternative, McCauley argued that he received ineffective assistance of counsel if his trial counsel failed to "properly object" to the trial court inserting itself into the trial.[4]

---

[3] An additional count of possession of a firearm by a felon related to the firearm found in McCauley's possession at the time of his arrest was dismissed and read in for purposes of sentencing.

[4] McCauley has not pursued his claim of ineffective assistance of counsel on appeal. The State similarly does not pursue any argument on appeal that McCauley's trial counsel failed to object.

4

¶7     Without requesting a response from the State or holding a hearing, the trial court denied McCauley's motion saying:

> The court wholly rejects the defendant's bias claim. There is no reasonable reading of the court's comments as evincing any sort of bias toward the State. Rather, the totality of the record makes it clear that the procedure the court followed was entirely appropriate under the circumstances, particularly since it was revealed that Battle was fearful and had been threatened by "Charlie." The defendant does not have a due process right to benefit from third-party threats toward the State's witnesses. In sum, the court stands by its remarks during the trial and denies the defendant's motion for a new trial on these grounds.

In its written decision and order denying McCauley's postconviction motion, the trial court also acknowledged that McCauley's trial counsel objected to the judge's interruption of Battle's testimony when it stated that: "The court then acknowledged that counsel for the defendant was objecting to the court interjecting." The trial court thus did not address McCauley's alternative argument for ineffective assistance of counsel and addressed the merits of McCauley's postconviction motion.

¶8     McCauley now appeals.

## DISCUSSION

¶9     On appeal, McCauley argues that the trial court "abandoned its neutrality" and violated his right to due process when it "admonished" Battle. He also argues that there is insufficient evidence from which the jury could find that he intended to rob Ross, which was one of the elements of his conviction for felony murder. We disagree, and we address each of McCauley's arguments in detail below.

5

## I. Battle's Testimony

¶10 In his first argument, McCauley argues that the trial judge violated his right to due process when she interrupted Battle during her testimony. He argues that the only interpretation of the judge's interruption is that the judge was acting as an advocate for the State by raising concerns about the truthfulness of Battle's testimony that overstepped the judge's neutral role. McCauley asserts that "the judge perceived that McCauley was benefitting from Battle's uncooperative testimony" and so, "without any motion from either party, the judge took it upon herself to make sure that McCauley did not benefit." In so doing, McCauley contends that the judge "abandoned her neutrality" and "became the prosecutor," and that the judge called Battle a liar and admonished Battle in order to persuade her to give testimony beneficial to the State. McCauley further argues that the judge's own explanation in the denial of his postconviction motion makes this obvious when the judge stated, "The defendant does not have a due process right to benefit from third-party threats toward the State's witnesses." We disagree with McCauley.

¶11 "The right to an impartial judge is fundamental to our notion of due process." *Miller v. Carroll*, 2020 WI 56, ¶15, 392 Wis. 2d 49, 944 N.W.2d 542 (citation omitted). "We presume that a judge has acted fairly, impartially, and without bias." *Id.*, ¶16. The party asserting judicial bias bears the burden of overcoming the presumption by showing bias by a preponderance of the evidence. *Id.* If the presumption is rebutted, the result is a due process violation, and such an error is "structural and not subject to a harmless error analysis." *Id.* "Whether a circuit court's partiality can be questioned is a matter of law that we review independently." *State v. Goodson*, 2009 WI App 107, ¶7, 320 Wis. 2d 166, 771 N.W.2d 385.

¶12 In this case, we are confronted with an issue of objective bias.[5] *See Miller*, 392 Wis. 2d 49, ¶21. "Objective bias can exist in two situations: (1) where there is an appearance of bias; and (2) where objective facts demonstrate that a judge treated a party unfairly." *State v. Marcotte*, 2020 WI App 28, ¶17, 392 Wis. 2d 183, 943 N.W.2d 911. "The appearance of partiality constitutes objective bias when a reasonable person would conclude 'that the average judge could not be trusted to hold the balance nice, clear, and true under all the circumstances.'" *Id.* (citation omitted). Where the appearance of bias "reveals a great risk of actual bias, the presumption of impartiality is rebutted, and a due process violation occurs." *Id.* (citation omitted).

¶13 We conclude that McCauley has not overcome the presumption and shown that the judge's interruption of Battle's testimony rises to the level of objective bias. As previous cases instruct, "it is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Miller*, 392 Wis. 2d 49, ¶24 (citation omitted); *see also State v. Carprue*, 2004 WI 111, ¶¶63, 66, 274 Wis. 2d 656, 683 N.W.2d 31.

¶14 In *Miller*, our supreme court concluded that objective bias existed where the judge, who was Facebook friends with the mother who filed the motion, presided over a hotly contested two-day evidentiary hearing involving the sole custody and physical placement of a child. *Id.*, 392 Wis. 2d 49, ¶¶7, 25-35. During the twenty-five days between the judge's acceptance of the mother's friend

---

[5] A judge may also be subjectively biased. *See State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. Subjective bias is present when a judge has personal doubts as to whether he or she can be impartial. *Id.* Because McCauley does not allege that the judge was subjectively biased, we do not address that issue.

request and his issuance of his written decision entirely in her favor, the mother engaged with and reacted to at least twenty of the judge's Facebook posts. *Id.*, ¶8. The majority of the mother's reactions were "likes" to the judge's posts involving prayers and Bible verses he posted. *Id.* The court concluded that

> [The mother] was allowed the opportunity to give [the judge] additional information about herself and an extra "remember me" almost [twenty-five] different times during the time period when the matter was under advisement, all unbeknownst to [the father]. By reacting to and engaging with [the judge's] posts, [the mother] was effectively signaling to [the judge] that they were like-minded and, for that reason, she was trustworthy. She was conveying to him off-the-record information about her values, character, and parental fitness—additional evidence [the father] did not have the opportunity to rebut.

*Id.*, ¶31. The court then concluded that "the extreme facts of this case rebut the presumption of judicial impartiality and establish a due process violation." *Id.*, ¶36.

¶15 In *Marcotte*, this court concluded that Marcotte had met his burden to demonstrate objective bias based on the judge's comments that indicated that he had determined, before sentencing after Marcotte's revocation of probation, that Marcotte would be sentenced to prison if he did not succeed in drug court. *Id.*, 392 Wis. 2d 183, ¶1.[6] This court noted that

> [A]t various times before Marcotte's sentencing after revocation hearing, [the judge] communicated to Marcotte that he would be sentenced to prison if he did not succeed in drug court. In particular, [the judge] expressly told

---

[6] This court also concluded that "a reasonable person would conclude there was a great risk that [the judge's] personal frustration with Marcotte's failure in drug court would lead him to impose a harsher sentence than he would have otherwise imposed had he not presided over the drug court proceedings." *State v. Marcotte*, 2020 WI App 28, ¶30, 392 Wis. 2d 183, 943 N.W.2d 911.

> Marcotte during one drug court hearing that if he was discharged from the drug court program, he would "get sentenced and … go to Dodge." [The judge] also warned Marcotte during his original sentencing hearing that if he did not succeed in drug court, there would be "no mercy" when Marcotte returned for sentencing after revocation. [The judge] followed through on that promise at Marcotte's sentencing after revocation hearing, imposing a sentence longer than those requested by both the State and the DOC. Moreover, [the judge] stated during the sentencing after revocation hearing that because Marcotte had failed in drug court, he had "no choice" but to sentence him to prison.

*Id.*, ¶19. The court then concluded that "[a] reasonable person would interpret these comments to mean that [the judge] had decided long before Marcotte's sentencing after revocation hearing that he would impose a prison sentence if Marcotte was terminated from drug court." *Id.*

¶16    Here, we conclude that the judge's interruption of Battle's testimony does not rise to the same level of extreme facts demonstrated by the cases mentioned above. Importantly, the judge here was not the fact finder at McCauley's trial. Indeed, the jury—the ultimate fact finder at McCauley's trial— was absent from the courtroom during the judge's interruption of Battle's testimony, and the jury was unaware of the judge's comments and Battle's conversation with her attorney. The judge also did not threaten Battle that the State would revoke the plea agreement, but only indicated, out of concern for Battle, that it was something that the State might consider if Battle continued to testify in a seemingly uncooperative manner. *See Carprue*, 274 Wis. 2d 656, ¶41 ("While the court cannot function as a partisan, it may take necessary steps to aid in the discovery of truth." (citation omitted)); *see also United States v. Smith*, 997 F.2d 674, 680 (10th Cir. 1993) ("[A]s a general rule a court 'has the discretion to warn a witness about the possibility of incriminating' himself or herself." (citation omitted)); *United States v. Arthur*, 949 F.2d 211, 215 (6th Cir. 1991) ("The

9

district court has the discretion to warn a witness about the possibility of incriminating himself."). After explaining the interruption, the judge then also allowed Battle time to speak with her attorney and did not continue the trial until Battle's attorney was satisfied that he had sufficient time to consult with Battle. Therefore, we reject McCauley's argument.

¶17 In reaching this conclusion, we emphasize that "[w]hile prudence would have counseled less assertive conduct from the circuit judge, the law does not demand a reversal of [McCauley's] conviction." *See* **Carprue**, 274 Wis. 2d 656, ¶1. Thus, "[w]hile the circuit judge's actions were inadvisable, the defendant has failed to demonstrate he is entitled to reversal of his conviction under any applicable legal theory." *Id.*, ¶3.

## II. Sufficiency of the Evidence

¶18 McCauley additionally argues that the State presented insufficient evidence to prove that McCauley intended to rob Ross and thus, the State presented insufficient evidence to support his conviction for felony murder. Specifically, McCauley argues that the State presented insufficient evidence of his intent because Battle testified that McCauley intended to "take" Ross's money. He then argues that "take" does not mean that McCauley intended to "steal" Ross's money.

¶19 In addressing McCauley's argument, we first note that McCauley failed to refute the State's argument that the evidence was sufficient to support his conviction for felony murder in his reply brief, and therefore, we conclude that he has conceded any argument regarding the sufficiency of the evidence. *See* **United Coop. v. Frontier FS Coop.**, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failing to refute a proposition asserted in a response brief may be

taken as a concession). Nevertheless, in the interest of being complete, we address the merits of McCauley's arguments. After considering his arguments and the State's arguments, we agree with the State's arguments. Thus, we conclude that the evidence introduced at trial was sufficient to support the jury's verdict.

¶20   A challenge to the sufficiency of the evidence to support a criminal conviction is a question of law that we review *de novo*. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. *State v. Poellinger* establishes the standards that we apply when reviewing the sufficiency of the evidence to support a conviction as follows:

> [We] may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citations omitted). Additionally,

> [i]n reviewing the sufficiency of circumstantial evidence to support a conviction, [we] need not concern [ourselves] in any way with evidence which might support other theories of the crime. [We] need only decide whether the theory of guilt accepted by the trier of fact is supported by sufficient evidence to sustain the verdict rendered.

*Id.* at 507-08.

¶21    As the State correctly asserts in its argument, McCauley's argument is nothing but a dispute with the inference the jury drew from the evidence adduced at trial as to the element of intent.[7]  McCauley asserts that Battle testified that McCauley said he was going to "take" money from Ross.  He then argues that "taking" is not necessarily stealing and that here there is a wholly reasonable explanation why McCauley would be taking money from Ross—because Ross was going on a prostitution date with Battle.  In other words, McCauley is arguing that the evidence was insufficient to sustain his conviction because there is a different inference the jury could have drawn from the fact that he planned to take money from Ross that was consistent with his innocence.

¶22    By contrast, the State argues that it was for the jury to determine if the fact that McCauley decided to arm himself with a gun and go outside to take money from Ross sufficiently showed an intent to steal Ross's money forcibly by threatening him with the gun.  It further argues that the jury could rationally conclude that McCauley arming himself with the gun, saying he was going to take Ross's money, and attempting to order Ross out of the car proved that McCauley intended to commit armed robbery.

¶23    As noted, we agree with the State.  We conclude that the jury clearly rejected McCauley's inference when it found him guilty and instead chose to infer, taking into account the circumstances under which Ross met with Battle that night, that "take" meant that McCauley intended to "steal" Ross's money.  This is a

---

[7] As relevant to McCauley's argument regarding intent, McCauley's charge of felony murder, with the underlying offense of attempted armed robbery, required that the State prove that McCauley attempted to take Ross's property with the intent to steal it.  *See* WIS JI—CRIMINAL 1480.

reasonable inference that the jury was entitled to draw from Battle's testimony. *See* **Poellinger**, 153 Wis. 2d at 506 ("In viewing evidence which could support contrary inferences, the trier of fact is free to choose among conflicting inferences of the evidence and may, *within the bounds of reason*, reject that inference which is consistent with the innocence of the accused."). We, therefore, will not upset the jury's chosen inference, and we conclude that the evidence was sufficient to support the jury's verdict.

## CONCLUSION

¶24 In sum, we reject McCauley's arguments for a new trial. McCauley has failed to demonstrate that the judge's interruption of Battle's testimony violated his right to due process, and McCauley has both conceded that the evidence was sufficient and also failed to demonstrate that the State presented insufficient evidence of McCauley's intent to steal at trial. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).