79 F.3d 1149
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert LIBBY, Defendant-Appellant.
 No. 95-1751.
 United States Court of Appeals, Sixth Circuit.
 March 15, 1996.
 
 Before: MERRITT, WELLFORD and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 On appeal, defendant Robert Libby challenges his continued term of supervised release, arguing that it had been revoked by the district court and had not been reinstated. The district court ruled that supervised release had not been revoked but merely modified to include a three-month detention at a local community center. We find no reversible error and affirm.
 
 
 2
 On January 27, 1993, Libby received a 27-month prison sentence, to be followed by three years of supervised release. On February 8, 1994, he was released from custody and began his term of supervised release. On March 9, 1995, the district court found that Libby had violated the conditions of his supervised released. At this violations hearing, Judge Rosen stated:
 
 
 3
 Well, Mr. Libby, I'll tell you what I'm going to do. I came out here with an inclination to reincarcerate you but I'm not going to do that. Instead, I'm going to have you spend three months in the local community corrections center, and I will provide as conditions of release, you can leave to have family visitation with your kids, you can also leave to pursue education or preferably a job, sir, employment searching.
 
 
 4
 Joint Appendix at 50. On March 10, 1995, the Judgment and Commitment Order was filed, which "committed [Libby] to the custody of the United States Bureau of Prisons to be imprisoned for a term of 3 months," recommending that he "serve his sentence at the Arete Community Treatment Center." Id. at 20.
 
 
 5
 Libby's probation officer, Dennis Roy, sent a letter to the district judge on March 15, 1995, seeking to clarify that supervised release had not been revoked. He wrote:
 
 
 6
 It was my impression that revocation was not to occur but that the conditions of supervised release be modified so that, as a condition of supervision, Mr. Libby spend three months at the Arete Center. This is what we discussed in chambers. As I read the Judgment in its current form, the supervised release is now terminated. Id. at 42.
 
 
 7
 Defense counsel filed two letters opposing any amendment to the Judgment and Commitment Order.
 
 
 8
 On May 18, 1995, the court below issued a Notice of Continuation of Supervised Release Hearing. Libby filed a memorandum opposing any amendment or modification to the order. On June 15, 1995, Judge Rosen held a hearing at which he interpreted the record to indicate that the order confining Libby to the Arete Community Treatment Center was a modification of his supervised released. It is this determination that Libby now appeals.
 
 
 9
 The Rules of Criminal Procedure permit judges to correct sentences under limited circumstances.[1] Clerical mistakes "arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." Federal Rules of Criminal Procedure. 36. We have interpreted Rule 36 to allow a district court sua sponte to amend a judgment and sentencing order that omitted a term of supervised release. United States v. Strozier, 940 F.2d 985, 987 (6th Cir.1991). Although the Strozier opinion seems to indicate that the district court's authority to modify must be done "within the time for appeal," Rule 36 clearly establishes that courts may correct such mistakes "at any time." Id.
 
 
 10
 It is a well-found principle of procedural law that a discrepancy between an oral sentence and the written order is controlled by an unambiguous oral sentence. Only when ambiguity exists is it permissible to examine the district court's intent based on extrinsic evidence. United States v. Becker, 36 F.3d 708, 711 (7th Cir.1994); United States v. Sasser, 974 F.2d 1544, 1562 (10th Cir.1992), cert. denied, 113 S.Ct. 1063 (1993); United States v. Khoury, 901 F.2d 975 (11th Cir.1990); United States v. Kindrick, 576 F.2d 675, 676-77 (5th Cir.1978). During the violations hearing, Judge Rosen discussed how he would not incarcerate Libby, because of positive steps he was making:
 
 
 11
 [Y]ou appear to be pulling your life together. For that I commen[d] you, to the extent that you're working and taking care of your children, and we will fashion in our--in our order, we'll allow you to continue to visit with your kids, see your kids, and look for a job or if you want to pursue education, you can do that but you're going to have to spend three months at the community corrections center in Arete.
 
 
 12
 Joint Appendix at 51. He fashioned this decision, while chastising Libby for his actions regarding supervised release:
 
 
 13
 Mr. Libby, you're just going to have to understand, there are laws. There are rules that you must follow: Supervised release.
 
 
 14
 When you're required to file these monthly reports, these are not simply forms that you can fill out and lie on. There are reasons why we have these forms and you can't misrepresent to your probation officer[.]
 
 
 15
 Judge Rosen displayed leniency toward Libby, but he expected him to be under supervised release in the future and to adhere to the rules, including cooperating and reporting accurately to his probation officer. At the June 15 hearing, Judge Rosen explained that the written order did not adequately reflect his intention to modify Libby's terms of his supervised release, which were to continue for its full three-year term. The district judge pointed to his prior determination, made explicit at that earlier hearing, that he was not going to incarcerate Libby, even though that was one of the court's options. Libby argues that Judge Rosen's intentions cannot be used to alter Libby's conditions at a subsequent hearing. We view this simply as a matter of the court's exercise of its authority to correct clerical mistakes.
 
 
 16
 It is true that if a defendant's supervised release has been revoked, a district court has no authority subsequently to sentence the defendant to a further term of imprisonment or a new term of supervised release. United States v. Webb, 30 F.3d 687, 689 (6th Cir.1994); United States v. Truss, 4 F.3d 437, 439 (6th Cir.1993). However, nothing stated at the March 9 hearing indicates that supervised release was revoked. Instead, it appears that the district judge modified the conditions to include the three months at the Arete Community Treatment Center as a balanced measure to permit Libby to continue rehabilitation while learning that the conditions of supervised release must be strictly followed.
 
 
 17
 Libby maintains that his time in community confinement is the equivalent to incarceration. See United States Sentencing Commission, Guidelines Manual, § 5C1.1(e)(2) ("One day of community confinement ... for one day of imprisonment" ). Chapter 5 of the Sentencing Guidelines specifically deals with sentencing, while Chapter 7 addresses supervised released. This court has interpreted 18 U.S.C. § 3583 to indicate that "the sentencing phase is different than post-sentence modification." United States v. Spinelle, 41 F.3d 1056, 1060 (6th Cir.1994). Therefore, the equivalency of confinement to imprisonment is irrelevant in regard to the setting of conditions of supervised release.
 
 
 18
 Libby further insists that this court has "extended due process protections to the revocation of supervised release." United States v. Stephenson, 928 F.2d 728, 732 (6th Cir.1991), and that those protections have not been honored in this case. This argument assumes, of course, that the district court's actions at the violations hearing constituted a revocation of supervised release. As previously noted, we conclude that revocation did not occur here. Nevertheless, due process protections should also extend to modification of supervised release. Therefore, a defendant charged with violation of the conditions of his supervised release is entitled to a hearing addressing the relevant facts, id., a right that was scrupulously honored in this case.
 
 
 19
 In terms of due process, it is also important to examine whether the district court's correction of the clerical mistake, pursuant to Rule 36, was done in a timely manner. Libby maintains "courts have recognized a convicted defendant's due process right to finality of even erroneous sentences." See DeWitt v. Ventetoulo, 6 F.3d 32, 36 (1st Cir.1993), cert. denied, 114 S.Ct. 1542 (1994). Libby argues he had "a reasonable expectation that the March 9, 1995 sentence of three months in the community corrections center was final." Appellant's Reply Br. at 9. The defendant's "right to finality" must be considered in terms of a judge's authority to correct mistakes, however.
 
 
 20
 There is, simply, nothing in this record to show that Judge Rosen's action in correcting the record was unreasonable. It may be preferable for district court judges to state explicitly that supervised release is not being revoked, if for no other reason than to prevent unnecessary appeals. In this case, however, the record clearly establishes Judge Rosen never intended to revoke Libby's supervised release, even in the absence of an explicit statement to that effect.
 
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Neither party maintains that Rule 35 applies, so we do not address this issue