RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0224P (6th Cir.)
File Name: 03a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

Nos. 02-5147/5148

DEMICO BOOTHE,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 01-20139; 92-20003—Julia S. Gibbons,
District Judge.

Argued: June 17, 2003

Decided and Filed: July 8, 2003

Before: MARTIN, Chief Circuit Judge; KRUPANSKY
and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** M. Dianne Smothers, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. Timothy R. DiScenza, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** M. Dianne Smothers, OFFICE OF THE

FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. Timothy R. DiScenza, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Chief Circuit Judge. This
appeal arises from the jury conviction of Demico Boothe for
violations of 18 U.S.C. § 371, conspiracy to defraud the
United States, and 18 U.S.C. § 472, possession of counterfeit
security with intent to pass as genuine. Boothe also appeals
the sentence of a consecutive ten months, in addition to the
sentence for the aforementioned crimes, for violation of his
supervised release in a prior criminal case. Boothe claims
that the district court improperly dissuaded a defense witness
from testifying and persuaded the witness to plead the Fifth
Amendment. Boothe further claims that the district court
erred in allowing the witness to take the privilege at all.

In the spring of 2001, Calvin Boothe, a codefendant in this
case and the witness in question, approached an informant for
the United States, Renita Little, and asked if she could help
him acquire $200,000 in counterfeit money. She made
arrangements for the counterfeit money at a cost of $30,000.
Calvin involved Demico in the process, and both men talked
to Little. Calvin and Little made arrangements to meet at a
parking lot on May 7, 2001. Little was wired for the
transaction, and Secret Service agents put the counterfeit
money in the trunk of her car and trailed her to the designated
parking lot. Demico and Calvin arrived shortly after Little
did. Little told Calvin where the money was, and he retrieved
the package from the trunk of the car. Secret Service agents
promptly arrested Calvin and Demico.

At Demico's trial, severed from Calvin's, Demico's
attorney indicated that she wanted Calvin to testify. The
attorney indicated that Demico's decision whether or not to

testify was contingent upon Calvin's testimony. Calvin came to court to testify. Calvin's counsel was also present, and she expressed to the court her concern that Calvin, who had already pled guilty to the offenses charged, would either say something that could impact his sentencing or would perjure himself, in an attempt to exculpate Demico.

The district court examined Calvin out of the presence of the jury. The district court explained to Calvin that Demico's attorney would ask Calvin about what happened and that Calvin had a right to refuse to testify on the grounds that his statement might incriminate him. The court repeatedly stressed to Calvin that he did not have to testify and that his testimony was "not in [his] interest." Calvin finally agreed to talk to his lawyer again, and when he retook the stand, he refused to testify, stating, " I can't risk my points being taken from me" (referring to the district court's warning that his own sentencing could be affected by acceptance of responsibility or obstruction of justice adjustments if the court perceived that he had lied on the stand to protect Demico).

We review the assertion of a Fifth Amendment privilege against self-incrimination and its grant or denial for abuse of discretion. *United States v. Mack*, 159 F.3d 208, 217 (6th Cir. 1998). Demico makes two claims: first, he claims that the district court behaved inappropriately in questioning Calvin about taking the privilege, even to the point of persuading or coercing him to do so; second, Demico claims that Calvin did not have a right to the privilege at all.

Turning to the first question, this court has said, "The district court has the discretion to warn a witness about the possibility of incriminating himself. An abuse of that discretion can occur, however, when the district court actively encourages a witness not to testify or badgers a witness into remaining silent." *United States v. Arthur*, 949 F.2d 211, 215-16 (6th Cir. 1991) (internal citations omitted). The court went on to note that such badgering is a violation of due process, citing *Webb v. Texas*, 409 U.S. 95 (1972). *Arthur*, 949 F.2d at 216. This is because "[t]he Supreme Court has

expressly recognized that a party's right to present his own witnesses in order to establish a defense is a fundamental element of due process." *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

We said in *Arthur*, 949 F.2d at 216,

Larry Fields was represented by counsel and stated to the district court that he wanted to testify after he had been informed by the court of his right to remain silent. The district court repeatedly informed Fields of his right to remain silent and stated to him that to testify was against his interest. Under these circumstances, we think it was an abuse of the district court's discretion to so induce Larry Fields to exercise his fifth amendment rights.

Demico believes that his situation is sufficiently similar to that at issue in *Arthur*. As is clear from the record, Calvin came to court prepared to testify in Demico's defense. When first questioned by the district court, Calvin acknowledged that he had come "to tell the truth." He stated that he had discussed testifying with his lawyer and was making an informed decision. The district court told Calvin it was probably not in his interest to testify. As Demico points out, Calvin did not change his mind when warned about the penalties for perjury or when warned of the possibility of losing his points in sentencing for acceptance of responsibility and the possibility of increasing his points for obstruction of justice. Both government counsel and Calvin's counsel told the district court they had nothing more to say to Calvin, but the district court asked him again whether he would like to speak with his attorney. It was only after that additional conversation that Calvin decided to assert the privilege. Demico argues that this situation is analogous to that in *Arthur*, and he argues that the district court badgered Calvin into asserting the privilege.

We today reiterate the *Arthur* standard, that it is an abuse of discretion for a district court to actively discourage a witness from testifying. Nevertheless, we do not believe that the

district court's behavior in this case rises to the level of *Arthur*. The district court here was concerned that Calvin would incriminate himself and therefore was thorough in her warnings. We do not believe those warnings rose to the level of badgering that *Arthur* forbids.

We turn now to the question of whether or not Calvin actually had a right to assert the Fifth Amendment privilege against self-incrimination. "Before a witness . . . is entitled to remain silent, there must be a valid assertion of the fifth amendment privilege." *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983). The district court must decide "whether a witness' silence is justified and [must] require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity." *Id.* Nevertheless, "Because we review for an abuse of discretion, the district court's ruling will be affirmed unless we are left with a 'definite and firm conviction that the trial court committed a clear error of judgment.'" *Mack*, 159 F.3d at 217 (internal citations omitted).

In *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir.1998) (citing *United States v. Damiano*, 579 F.2d 1001, 1003 (6th Cir.1978)), we discussed the balance between the defendant's and witness's rights: "A defendant's right to force a witness to testify must yield to that witness' assertion of his Fifth Amendment privilege against self incrimination, where it is 'grounded on a reasonable fear of danger of prosecution.'" Demico argues that, because Calvin has already pled guilty to the charges, Calvin cannot actually fear prosecution for those charges or for others. We said in *United States v. Smith*, 245 F.3d 538, 543 (6th Cir. 2001) (internal citations omitted), that while

the privilege against self-incrimination is lost once a witness has been convicted of the offense with respect to which he fears incrimination, as well as when a witness pleads guilty to the offense in question, rather than being convicted at trial. . . . "[a]t the same time, it is equally true that a witness does not lose his Fifth Amendment

right to refuse to testify concerning other matters or transactions not included in his conviction or plea agreement." "Pleading guilty to a crime does not waive the privilege not to incriminate oneself at other times in other crimes, any more than conviction of one crime erases the privilege as it relates to others."

For that reason, the United States argues, Calvin's invocation of the Fifth Amendment was appropriate. Calvin feared prosecution on perjury charges, and those charges constituted the "other crimes" mentioned in *Smith*.

Demico would have us adopt the standard of the Fifth Circuit in this respect. That court said, in *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986) (footnote omitted),

A witness may not claim the privilege of the fifth amendment out of fear that he will be prosecuted for perjury for what he is about to say. The shield against self-incrimination in such a situation is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told.

*See also United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998). Similarly, this court has held that the "Fifth Amendment grants a privilege to remain silent without risking contempt, but it does not endow the person who testifies with a license to commit perjury." *United States v. Charles*, 138 F.3d 257, 267 (6th Cir. 1998) (internal citations omitted).

Nevertheless, *Smith* also noted that, in *Bank One of Cleveland v. Abbe*, 916 F.2d 1067, 1076 (6th Cir. 1990), we held a guilty plea is not a blanket waiver of the privilege against self-incrimination and it survives through sentencing. *Smith*, 245 F.3d at 543. This idea was affirmed by the Supreme Court in *Mitchell v. United States,* 526 U.S. 314, 325 (1999) (internal citations omitted), where the Court said, "Where a sentence has yet to be imposed, however, this Court has already rejected the proposition that incrimination is complete once guilt has been adjudicated, and we reject it

again today."  For these reasons, we agree with the United States that Calvin had a right to plead the Fifth Amendment with regard to the risk of enhancement of his sentence.  We also refuse to go so far as the standard enunciated by the Fifth Circuit Court of Appeals in *Whittington*.  783 F.2d 1218. Because we are not "left with a 'definite and firm conviction that the trial court committed a clear error of judgment,'" *Mack*, 159 F.3d at 217 (internal citations omitted), we hold that Calvin had a right to assert the privilege.

Finally, Demico appeals his sentence of ten consecutive months imprisonment for violation of his supervised release. The supervised release was a condition of Demico's sentence for a conviction for possession with intent to distribute cocaine base.

In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release. *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir.1997). Once this finding is made, whether the defendant's supervised release should be revoked is reviewed by us for an abuse of discretion. *Id.* at 85-86. Thus, in order to reverse in this case, we must find that the district court clearly abused its discretion.  Here it did not.  We affirm Demico's convictions for conspiracy to defraud the United States and possession of a counterfeit security, and therefore we hold that the revocation of the supervised release was appropriate.

For the foregoing reasons, we AFFIRM the judgment of the district court in all respects.