RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0373p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

               *Plaintiff-Appellee,*

    *v.*

OTIS D. CARR,

               *Defendant-Appellant.*

Nos. 04-1983/2208

>

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-80069—Bernard A. Friedman, Chief District Judge.

Submitted: July 7, 2005

Decided and Filed: August 31, 2005

Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Robert J. Dunn, Bay City, Michigan, for Appellant. Karen L. Reynolds, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge. Otis D. Carr pled guilty in 1998 to misapplying the funds of a financial institution and was sentenced to 12 months in prison followed by five years of supervised release. In 2004, Carr's probation officer notified the district court that Carr was in violation of his supervised-release obligations. After the district court afforded Carr three different hearings in which to demonstrate that he was capable of complying with his obligations, the court revoked his supervised release and sentenced him to 16 months in prison followed by an additional 44 months of supervised release.

Carr argues on appeal that the district court (1) abused its discretion in revoking his supervised release and imposing a 16-month term of imprisonment, and (2) violated his due process rights in filing an amended sentencing order 23 days after the entry of the court's original judgment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Carr was the owner of Broadway Builders, a construction company that received several fraudulent loans from a Detroit bank in 1995 and 1996. An acquaintance of Carr's, Major Taylor, was the bank loan officer who disbursed the funds. Together, Carr and Taylor converted the proceeds of these loans to their personal use. Much of Carr's share was spent at several Canadian casinos.

In 1998, Carr pled guilty to misapplying the funds of a federally insured financial institution, in violation of 18 U.S.C. § 656. Carr was sentenced to 12 months in prison in October of that year. After his term of imprisonment ended, he began a period of five years of supervised release in January of 2000. Carr was required to comply with certain conditions while on supervised release. Alleging that Carr had consistently failed to do so, his probation officer, Heather Rapotec, filed a petition with the district court in February of 2004. The petition charged Carr with (1) failing to make his monthly restitution payments of $400, (2) not maintaining regular employment in a lawful occupation, (3) being unavailable for home visits by his probation officer, and (4) neglecting to report a new arrest to his probation officer within 72 hours.

In March of 2004, at the first of Carr's three hearings in the district court, Rapotec was called to testify. She explained that she had made numerous attempts to bring Carr into compliance with the conditions of his supervised release, and that she had filed the petition with the district court only as a "last resort." Rapotec reported that Carr had missed at least one payment in 2000, that he had made only four of his monthly restitution payments in 2002 and again in 2003, and that he had made the two payments due to date in 2004. With respect to his failure to maintain regular employment, Rapotec said that Carr had given her documentation to support his claim that he was a diabetic and on disability for a knee injury. But when Rapotec called Carr's doctors in January of 2002 to see how long he would be disabled, she was told that he could return to work after four weeks of physical therapy.

Rapotec further testified that she had scheduled a home visit with Carr in March of 2002 to discuss his difficulties in making timely restitution and in maintaining regular employment. Carr called Rapotec on the day of the scheduled visit and informed her that he would be away from his house for a short time. Because Rapotec had previously arrived at Carr's home for planned visits only to discover that he was not there, she agreed to reschedule the visit for the next day. When Rapotec arrived for the rescheduled visit, however, Carr was not at home. Rapotec said that she moved the visit to a later date in April, but that Carr also missed this meeting.

Following Rapotec's testimony, the district court asked Carr how he wished to plead with respect to the four alleged violations. Carr pled guilty to failing to report to Rapotec within 72 hours after he was arrested on state-law charges in 2001, but insisted that he was not aware that he was required to do so as a condition of his supervised release. He pled not guilty to the remaining charges that he had failed to make monthly restitution payments, maintain regular employment, or be present for home visits with his probation officer. Although he did not claim to have made all of his restitution payments, Carr maintained that he was unable to do so because he could not find work in the only field for which he was qualified (construction) on account of his felony record, his age of 64 years, and his health problems. He insisted that the monthly restitution payments of $400 were simply too high for his income.

After hearing the testimony of Rapotec and Carr, the district court decided to continue the proceedings for a month. The court instructed Carr to keep a daily journal during the interim period and to "keep track of all his time. I want to know what he does with his time, which will include contacts and everything else. Keep track of every penny . . . so we get some idea of what goes in and out." The court explained that it had decided to wait to rule on Carr's case "in fairness to him"

because "maybe restitution is too high," and the journal would show if Carr had "complied in good faith" with the conditions of his supervised release.

When the violation hearing continued a month later, in April of 2004, the district court expressed displeasure with Carr for having kept an incomplete journal. Carr had failed to record all of his time and expenses, as directed by the district court, and omitted from the journal the fact that he had moved residences and obtained employment. The district court decided to give Carr one more opportunity to demonstrate that he was capable of complying with the terms of his supervised release, so it continued the hearing again and directed Carr to compile a "detailed" journal in the interim.

On June 10, 2004, before Carr's next hearing, Rapotec was at a Detroit casino and saw Carr there. When Rapotec confronted Carr at their next meeting, he denied having been at the casino. Rapotec then called and spoke with an official at the casino, who informed her that Carr had a "player's card." The government subpoenaed the records of the casino relating to the gambling activity reflected on this player's card, and learned that Carr had gambling losses of $13,000 in 2001, $15,000 in 2002, $11,000 in 2003, and $2,000 to date in 2004. These losses suggested that Carr had enough money to pay as much as $1,000 per month in restitution. When Rapotec confronted him with this evidence, Carr insisted that he had been to the casinos only a few times to eat dinner and that his friends were using his player's card to gamble.

At the third violation hearing in July of 2004, the district court was presented with this evidence of Carr's gambling habits. The district court also had before it Carr's journal entries for the past three months. Although the district court had instructed Carr to record all of his activities, there was no mention anywhere in his journal of his trips to the casino. The court was greatly troubled by this. Its concern was not that Carr had been going to the casino (because the court acknowledged that he was "entitled to some recreation"), but that he had lied in the journal that he presented to the court.

Recalling that Carr had earlier testified that he was attempting to make his restitution payments but did not have the economic resources to fulfill this obligation, the district court now concluded that it had been "conned" by Carr's misrepresentations, and that Carr "ha[d] not even come close to fulfilling the requirements of [his] supervised release." The court announced that it was revoking Carr's supervised release, telling him: "You've made no effort and it doesn't appear that you're going to make any effort to rehabilitate yourself and at this point you need further punishment." The court stated that it was aware that the suggested maximum sentence under the Sentencing Guidelines was nine months, but "that the guidelines are way too low in this case." After listing several reasons why it had concluded that the suggested sentence was inadequate, the court sentenced Carr to 16 months of imprisonment.

Following the pronouncement of Carr's sentence, a colloquy ensued between the court, the prosecutor, Rapotec, and counsel for Carr concerning the period of supervised release that would begin after Carr was released from prison. The court stated that it had not done the mathematical calculations, but that "the record [was] to reflect that the supervision is to follow for the maximum that's permissible under the law." Rapotec stated that this would be 44 months. The court said that this was "okay," and that Carr's counsel should inform the court if Carr contended that Rapotec's calculation was incorrect.

On July 20, 2004, the district court issued an order that sentenced Carr to 16 months of imprisonment. The order contained no term of supervised release. On August 13, 2004, however, the district court issued an amended order that included a 44-month term of supervised release. This timely appeal followed.

## II.  ANALYSIS

### A.      Standard of review

"We review a district court's actions in supervised release cases for abuse of discretion." *United States v. Webb*, 30 F.3d 687, 688 (6th Cir. 1994).  A district court's sentence of imprisonment upon revocation of supervised release should be affirmed "if it shows consideration of the relevant statutory factors and is not plainly unreasonable."  *United States v. McClellan*, 164 F.3d 308, 309 (6th Cir. 1999).

### B.      Revocation of supervised release

Carr argues that the revocation of his supervised release was an abuse of discretion because the district court had failed to make the findings of fact necessary to support such a decision.  In order to revoke Carr's supervised release and return him to prison, the district court was required to find by a preponderance of the evidence that Carr had violated one or more of its conditions.  *See United States v. Boothe*, 335 F.3d 522, 527 (6th Cir. 2003); *see also* 18 U.S.C. § 3583(e)(3) (stating that a district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release").  Carr insists that the district court failed to make the necessary findings of fact with regard to whether he had complied with the condition requiring him to make monthly restitution payments.

The record does not support Carr's argument.  At his third hearing before the district court in July of 2004, Carr entered a guilty plea to the charge of failing to pay restitution.  He also reaffirmed that he had pled guilty to the charge of failing to inform his parole officer of his 2001 arrest within 72 hours of its occurrence, a plea that he had entered when he first appeared before the court in March of 2004.  After Carr entered pleas of not guilty to the remaining two alleged violations, the following exchange occurred between the court and Carr's counsel:

> Court:       Just so we have a clear record, he admits number one, and wants
>              to give me an explanation for that, and that's the defendant shall
>              pay restitution and so forth . . . .  [A]nd number four [that he failed
>              to report his arrest] he admits at this time, with an explanation. . . .
>              Is that a fair representation as of the status of this matter at this
>              point?
>
> Counsel:   I believe so, your Honor.
>
> Court:       Okay.  Then we will—since he's admitted to—let me hear—we'll
>              proceed at least at this time on those two violations . . . .

The written order issued by the district court states that "[t]he defendant admitted guilt as to violation of condition(s) 1 & 4," but "[t]he defendant has not violated condition(s) 2 & 3 and is discharged of such violation(s)."  Carr's guilty pleas clearly established that he violated conditions one and four of his supervised release.  We therefore find unavailing the argument advanced by Carr that the district court failed to make the requisite factual findings before revoking his supervised release.

Carr argues in the alternative, however, that the district court's finding that he had violated these two conditions of his supervised release was simply a pretext for the court's decision.  He contends that its real motivation in revoking his supervised release was the court's outrage that Carr had been frequenting a Detroit casino and lying about that fact in the journal he submitted to the court.  The allegations regarding the casino, he maintains, were neither admitted to by him nor found

by the district court by a preponderance of the evidence, and so cannot support the district court's decision to revoke his supervised release.

In support of his argument, Carr cites the unpublished decision of this court in *United States v. Johnson*, No. 98-2002, 2000 WL 191816 (6th Cir. Feb. 8, 2000). The defendant in *Johnson* had admitted to certain violations of his supervised release conditions, but had denied other alleged infractions. *Id.* at *1. No findings of fact were made by the district court with respect to whether the defendant had committed the violations he denied. But in revoking the defendant's supervised release and sentencing him to a further term of imprisonment, the district court specifically referenced the alleged conduct that the defendant had denied. *Id.* at *2. This court reversed on appeal because we were left in "doubt as to the factual predicate that support[ed] the district court's judgment." *Id.* at *1.

Unlike the lower court in *Johnson*, however, the district court in the present case specifically announced at sentencing: "I'm not holding the fact that you were in a casino against you. But I did require you to give me a detailed analysis because . . . you weren't making restitution . . . ." The findings that Carr had been to the Detroit casino on June 10, 2004—the date Rapotec saw him there—and that his journal did not reflect this fact were amply supported by the evidence before the district court. Rapotec testified that she had personally witnessed Carr in the casino. *See United States v. Kirby*, — F.3d —, —, 2005 WL 1941283, at *4 (6th Cir. Aug. 15, 2005) (holding that "[t]he district court did not err in relying solely on the testimony of the probation officer to establish that [the defendant] had committed crimes while on supervised release"). Furthermore, records from the casino showed gambling losses of over $42,000 on a player's card in Carr's name between 2001 and the date the records were subpoenaed in 2004.

The journal that the court asked Carr to maintain and submit was intended to assist the court in determining if Carr's restitution payments were too high. His falsification of this journal was thus directly relevant to his claim that he had attempted to comply with this condition. *See United States v. Johnson*, 403 F.3d 813, 815-16 (6th Cir. 2005) (finding that the defendant's "forging [of] documents to conceal his failure to attend the required [Narcotics Anonymous] meetings" was relevant to the question of whether he had violated the condition of his supervised release that required him to receive drug treatment). We therefore conclude that the district court did not abuse its discretion in revoking Carr's supervised release.

## C.     Imposition of a 16-month term of imprisonment

Carr advances the argument that the district court's imposition of a 16-month term of imprisonment was plainly unreasonable because the court failed to consider the applicable policy statements set forth in the Sentencing Guidelines. *See United States v. Webb*, 30 F.3d 687, 688-89 (6th Cir. 1994) (stating that a sentencing court must consider the "non-binding policy statement" contained in Chapter Seven of the Sentencing Guidelines). Even though the "the policy statements contained in Chapter Seven of the Sentencing Guidelines are merely advisory," a court still must "consider them prior to imposing sentence for revocation of supervised release." *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999).

The district court noted that the Sentencing Guidelines suggested a maximum sentence of nine months for the supervised-release violations admitted by Carr. *See* USSG § 7B1.4. (recommending a sentence of three to nine months for the Grade C violations that Carr committed). This suggested sentence was rejected by the district court, however, because the court found that "the guidelines are way too low in this case." But in reviewing the recommended sentencing range, the district court complied with the requirement that it consider the policy statements contained in the Sentencing Guidelines. *See McClellan*, 164 F.3d at 310. Carr's argument is thus unpersuasive.

Alternatively, Carr contends that the 16-month sentence that he received was plainly unreasonable because the court allegedly did not consider the statutory sentencing factors listed in 18 U.S.C. § 3553. *See United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998) (explaining that "the district court's sentence must reflect consideration of certain factors listed in 18 U.S.C. § 3553 . . . ."). "The relevant factors listed in § 3553 include: the nature of the offense; the need to deter criminal conduct, to protect the public, and to provide defendant with appropriate treatment . . . ." *Id.* (citation and quotation marks omitted).

In sentencing Carr, the district court found that Carr had failed to make restitution, was unlikely to "make any effort to rehabilitate [him]self," had "not been a productive citizen," and was therefore in "need of further punishment." The district court thus properly considered the relevant statutory factors provided by 18 U.S.C. § 3553 before sentencing Carr. *See McClellan*, 164 F.3d at 310 (stating that the court need not follow a "ritualistic incantation" of the relevant factors, "[n]or is there a requirement that a district court make specific findings relating to each of the factors considered"). We therefore conclude that the district court did not act unreasonably when it sentenced Carr to 16 months of imprisonment, even though this sentence was 7 months longer than that suggested by the Sentencing Guidelines. *See United States v. Kirby*, — F.3d —, —, 2005 WL 1941283, at *6 (6th Cir. Aug. 15, 2005) (holding that a sentence that was 11 months longer than the recommended sentence was not unreasonable).

**D.     Amendment of the judgment to include supervised release**

Carr further claims that his due process rights were violated when the district court issued an amended judgment and commitment order 23 days after the entry of the court's original judgment. He contends that the court's "findings from the bench did not include ordering a term of supervised release following the sixteen month sentence imposed," and that he had a right to be heard before the court imposed the 44-month term contained in the amended judgment. *See United States v. Waters*, 158 F.3d 933, 944 (6th Cir. 1998) ("[W]e . . . require the district courts in our circuit to provide defendants with an opportunity to allocute before imposing a sentence for a violation of supervised release."). Carr concedes, however, that the imposition of the 44-month sentence would be permissible if we conclude that the district court did not violate Carr's right of allocution.

The district court stated at Carr's sentencing hearing that "the record is to reflect that the supervision is to follow for the maximum that's permissible under the law." Counsel for Carr immediately objected, insisting that Carr's supervised release could not be extended because it was "due to expire." The court admitted that it had "not done the calculation" necessary to determine the permissible duration of Carr's term of supervised release, but the court announced its determination that, "[i]f possible, [supervised release] will continue."

After the government informed the court that its calculations showed that the maximum sentence Carr could receive would be 44 months of supervised release, the court stated that it would impose this sentence so long as Carr's counsel did not "ha[ve] a problem with it." The written judgment issued by the court a few days after the hearing, however, did not contain a term of supervised release. An amended judgment entered by the court 23 days later did provide for 44 months of supervised release to follow Carr's term of imprisonment.

This court in *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004), held that a district court does not have jurisdiction to amend a sentence to correct "mistakes or omissions by the court," unless the amendment is made within the seven-day time limit provided by Rule 35 of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 35(a) ("Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."). "Beyond seven days, however, the court has jurisdiction to amend the sentence only in conformity with Rule 36 . . . ." *Robinson*, 368 F.3d at 656. Rule 36 of the Federal Rules of the Criminal Procedure permits

a district court to "at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." But "Rule 36 authorizes a court to correct only clerical errors in the transcription of judgments, not to effectuate its unexpressed intentions at the time of sentencing." *Robinson*, 368 F.3d at 656-57 (citing *United States v. Werber*, 51 F.3d 342, 343 (2d Cir. 1995); *see also United States v. Coleman*, 229 F.3d 1154, 2000 WL 1182460, at *2 (6th Cir. Aug. 15, 2000) (unpublished) ("[A] clerical error must not be one of judgment or even misidentification, but merely of recitation, of the sort that a clerk . . . might commit.") (citation and quotation marks omitted).

In the present case, the district court clearly announced its intention to sentence Carr to the "maximum" term of supervised release "permissible under the law." The circumstances here are therefore analogous to those in *United States v. Libby*, No. 95-1751, 1996 WL 117499 (6th Cir. Mar. 15, 1996) (unpublished), a case that the *Robinson* court distinguished. In *Libby*, the court "affirmed the district court's decision to amend a sentence by modifying a term of supervised release so that it conformed with what had been orally discussed at Libby's hearing on his supervised-release violation." *Robinson*, 368 F.3d at 657 (citing *Libby*, 1996 WL 117499, at *2); *see also United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000) ("[I]f there is a discrepancy between the oral pronouncement of a criminal sentence and the written judgment, the oral sentence generally controls.").

Although Rule 36 does not authorize "the amendment of a sentencing order to conform with an *unexpressed* sentencing intention,"*Robinson*, 368 F.3d at 657 (emphasis in original), the district court in this case unequivocally stated its intention to sentence Carr to 44 months of supervised release. This gave Carr the opportunity to be heard on his objections to the court's intended sentence. We therefore conclude that Carr's due process rights were not violated and that he was not denied the right of allocution when the district issued an amended judgment containing the 44-month term of supervised release.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.