NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0552n.06

Case No. 17-5058

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Oct 04, 2017 |
| Plaintiff–Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| PRESTON COLEMAN, | ) | DISTRICT OF TENNESSEE |
|  | ) |  |
| Defendant–Appellant. | ) |  |

**O P I N I O N**

BEFORE: KEITH, ROGERS, and McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge.

Preston Coleman appeals the district court's second revocation of his supervised release. After a hearing, the court found that Coleman violated the conditions of his supervised release by raping an acquaintance, C.B. In this appeal, Coleman asks us to: (1) reweigh the evidence and find that he did not commit the rape, and (2) remand for resentencing in light of "assistance" he provided to the government. Because the district court did not abuse its discretion in revoking his release or in imposing his sentence, we affirm.

**I**

This case involves Coleman's challenge to a second revocation of his supervised release. *See United States v. Coleman*, 570 F. App'x 438 (6th Cir. 2014). In 2011, Coleman was

convicted of being a felon in possession of a firearm, violating 18 U.S.C. § 922(g). *Coleman*, 570 F. App'x at 439. Before he was convicted, he was arrested for violating his conditions of pretrial release. (R. 60, Arrest Warrant, Pg. ID 74.) Following a fifteen-month prison term, he began a three-year term of supervised release. *Coleman*, 570 F. App'x at 439. In January 2014, the district court found that Coleman had again violated a condition of his release by robbing a Dollar General store. *Id.* The court revoked his supervised release under 18 U.S.C. § 3583(e)(3) and returned Coleman to prison for another ten months, to be followed by a twenty-six month term of supervised release. *Coleman*, 570 F. App'x at 439–40. We affirmed, finding Coleman's arguments to be "meritless" and noting his "obvious mischaracterizations" of the record. *Id.* at 440–41.

In August 2016, Coleman's probation officer advised the court that he had violated the conditions of his supervised release again. (R. 187, Arrest Warrant, Pg. ID 475.) The government then charged Coleman with two violations of his release conditions: (1) rape, and (2) failing to report the rape charge to his probation officer within seventy-two hours of his arrest. (R. 218, Revocation Hr'g Tr. (RH) Pg. ID 679–81.) The district court held a revocation hearing on January 18, 2017, where the government called the victim, C.B., and two police officers to testify about the incident. (*Id.* at 511–13.)

C.B. testified that she knew Coleman as a friend, but did not want to have a relationship with him. (*Id.* at 564–65.) She also knew that Coleman had other ideas. On August 8, 2015, she asked Coleman if he would drop her off at a club where she was planning to celebrate her birthday. (*Id.* at 564, 566, 584–85.) Coleman obliged, but arrived dressed for a date. (*Id.* at 622.) This confused C.B., as she had expressly told Coleman that she did not want to date him. (*Id.* at 564–66.) At the club, the two drank and mingled—mostly separately—until C.B. asked

Coleman if he could drive her home. (*Id.* at 632–34.) Coleman agreed, and they arrived at C.B.'s carport in the early morning hours of August 9, 2015. (*Id.* at 588–89.)

C.B. then testified that Coleman raped her in the carport. (*Id.* at 567–72.) Specifically, while the two were sitting in the car, Coleman suddenly let down her passenger seat, jumped on top of her, and forced her to have intercourse with him. C.B. testified that she never consented to the intercourse, and that she tried to fight back by pushing Coleman and kicking at the dashboard. (*Id.* at 592, 594–95.) After Coleman finished, she ran into her house, waited until she was sure Coleman had left, and then took a shower. (*Id.* at 568–69.)

C.B. contacted a friend about the rape, and her friend called the police. (*Id.* at 568–69, 597–99.) The police responded, investigated the incident, and eventually arrested Coleman. (*Id.* at 523–33, 620–21.) At the revocation hearing, the government called the responding officer and the lead investigator involved in the rape investigation. (*Id.* at 521–22, 531–33.) The officer testified to his recollection of C.B.'s statement and noted that she seemed "very distraught, disturbed, and angry, and surprised by the whole deal." (*Id.* at 522–26.) On cross-examination, the officer confirmed that the initial, live statement he took from C.B. was consistent with the full statement she provided later in the case. (*Id.* at 526.) The investigator also testified that C.B. seemed afraid, startled, and shaken up when he interviewed her. His recollection of her statement was substantially identical to C.B.'s live testimony. (*Id.* at 533–38.)

In his defense, Coleman presented a recording of C.B.'s testimony at Coleman's state-court preliminary examination on the rape charge. (*Id.* at 615–55.) That testimony was materially consistent with C.B.'s testimony at the revocation hearing. The district court found that C.B. was credible, that her testimony was corroborated by the two police officers, and that the government had proven by a preponderance of the evidence that Coleman raped C.B. (*Id.* at

681–702.)   After considering the sentencing factors in 18 U.S.C. § 3553(a), the district judge revoked Coleman's supervised release and ordered him to serve the remaining twenty-four months of his sentence in prison.  (*Id.* at 716–26.)  Specifically, the court noted that committing rape while on supervised release is both a serious offense and an egregious breach of the court's trust.  (*Id.* at 726.)  This appeal followed.  We affirm.

## II

A district court may revoke a term of supervised release if it finds by a preponderance of the evidence that the defendant violated any term of that release.  18 U.S.C. § 3583(e)(3).  We review for abuse of discretion, giving clear-error deference to the district court's factual findings. *Coleman*, 570 F. App'x at 440; *United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009).   Thus, if the court considered the relevant legal factors and did not impose a plainly unreasonable sentence, then we will affirm.  *Coleman*, 570 F. App'x at 440.  Ordinarily, we will not reweigh the evidence presented in a sentencing hearing, nor will we evaluate the credibility of witnesses—it is sufficient that the district court's decision was consistent with the record as a whole.  *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985)); *United States v. Webster*, 426 F. App'x 406, 411 (6th Cir. 2011) (revocation hearing).  None of Coleman's arguments meet this high standard.

## A

Coleman argues first that the evidence was insufficient to prove that he violated a condition of his supervised release.  We disagree.

Coleman correctly notes that we may, on occasion, find a witness's testimony "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson*, 470 U.S. at 575.   But that is far from the case here.   Coleman contends C.B.'s

testimony was "vastly inconsistent" because she (1) stated that Coleman both visited her home and took her to the club, (2) gave inconsistent testimony on whether or not she drank tequila at the club, (3) testified that her memory was fuzzy on some things, (4) gave inconsistent testimony on whether it was her or a friend who called the police after the alleged rape, and (5) gave inconsistent testimony about whether she was on a date with Coleman.[1]

These collateral inconsistencies are dwarfed, however, by C.B.'s testimony about the salient facts of the charge—whether Coleman raped her. (R. 218, RH, Pg. ID 561–611, 621–54.) C.B. consistently stated that Coleman was her assailant. She never wavered in her assertion that the penetration occurred, was accomplished by force, and was against her will. In each of her accounts of the incident, it occurred in the same location and at the same general time of day. Her testimony was consistent with the accounts of the responding officers. (*Id.* at 521–31, 531–60.) The district court found that her story was credible. (*Id.* at 701.)

Considering that the chief witness never wavered on the core details of the event, the district court's decision to believe her was not clear error. *See Darwich*, 337 F.3d at 663. The district court acknowledged the minor inconsistencies in C.B.'s story, but concluded that an honest person generally remembers the relevant details of an incident and lets the collateral facts "slip a bit here and there." (R. 218, RH, Pg. ID 701.) We find no abuse of discretion in that line of reasoning, and Coleman does not point us to any authority stating otherwise. Coleman's

---

[1] We fail to see how any reasonable person would find C.B.'s testimony on this last fact "inconsistent." She was painfully clear that she was not on a date with Coleman. (R. 218, RH, Pg. ID 566, 630, 633–34.) We have previously noted Coleman's "obvious mischaracterizations" of the record. *Coleman*, 570 F. App'x at 441. The district court issued similar warnings during the revocation hearing. (R. 218, RH, Pg. ID 604–05.) Coleman's brief quotes the record as showing that C.B. "remembered texting and talking to Mr. Coleman . . . about a date." (*Id.* at 630; Appellant's Br. at 9.) However, merely two lines later, and on the same page of the transcript, C.B. unambiguously states that she "did not go on a date" with Coleman. (*Id.*)

Coleman's attempt to twist this exchange into an admission that C.B. was in an intimate relationship with him comes perilously close to misrepresentation. Considering that counsel conducted the examination at issue, offered it as evidence, and quoted this page of the transcript in his brief, we cannot help but conclude that he was aware of the witness's immediate clarification. Counsel would be well-advised to avoid such blatant mangling of the record in any subsequent appeals.

argument that the proof "support[s] more plausibly" the opposite conclusion is an invitation to reweigh the evidence, which we will not do. *Darwich*, 337 F.3d at 663 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (quoting *Anderson*, 470 U.S. at 573–74).

We also note that Coleman was charged with violating *two* conditions of his supervised release. Although Coleman is challenging the court's findings on the rape charge (Violation No. 1), he admitted that he failed to report the charge to his probation officer within seventy-two hours of his arrest (Violation No. 2). Although these two charges are in no way equal, violating even one condition of supervised release is problematic, considering Coleman's history of violating his release conditions. (R. 218, RH, Pg. ID 723–24); *Coleman*, 570 F. App'x at 439–41; *United States v. Lindo*, 52 F.3d 106, 108 (6th Cir. 1995); *see also United States v. Carr*, 421 F.3d 425, 430 (6th Cir. 2005) (affirming revocation when defendant failed to pay restitution and failed to notify his parole officer of an arrest). This was Coleman's third violation of his release conditions—one during pretrial release, one by committing theft, and one by committing the present rape. We cannot say that the district court abused its discretion in revoking his supervised release.

**B**

Coleman also argues that the district court improperly refused to reduce his sentence in light of information he provided to the government. We disagree.

If a defendant violates a condition of his supervised release, then the court may return him to prison. 18 U.S.C. § 3583(e)(3). We will uphold the ensuing sentence unless it is procedurally or substantively unreasonable. *United States v. Conatser*, 514 F.3d 508, 519 (6th Cir. 2008). Our role in assessing Coleman's procedural-unreasonableness challenge is to "ensure

that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). Substantively, Coleman must show that the sentence was more severe than necessary to accomplish the purposes of 18 U.S.C. § 3553(a). *Conatser*, 514 F.3d at 520. When a sentence is within the Guidelines range for the offense, it receives a presumption of reasonableness. *Id.*

Here, both parties agree that the court properly calculated Coleman's Guidelines range and sentenced him within it. Thus, Coleman bears the burden of rebutting the presumption of reasonableness. *Id.* Coleman's only contention on this point is that the district court should have reduced his sentence based on information he provided to the government. However, the record in this case reveals no evidence that the information Coleman provided to the government was actually helpful. Coleman therefore has not carried his burden to show that his within-Guidelines sentence was unreasonable. (R. 218, RH, Pg. ID 705–08.) The district court therefore did not abuse its discretion in sentencing Coleman.

Finally, Coleman makes a thinly veiled allegation that the government's representatives engaged in some impropriety when they met with him about this information. However, he fails to specify how their actions were improper, and he does not cite any legal authority for his contentions. We therefore find this issue forfeited, and we do not review it. Fed. R. App. P. 28(a)(8)(A); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452–53 (6th Cir. 2003).

**III**

The district court did not abuse its discretion in revoking Coleman's term of supervised release. Neither did it impose an unreasonable sentence. The judgment of the district court is therefore **AFFIRMED**.